**LISA GUSSIN**, Plaintiff–Appellant, v. **DANIEL A. GUSSIN**, Defendant–Appellee

NO. 14966

(FC–D NO. 89–0721)

OCTOBER 17, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT
JUDGE YIM ASSIGNED BY
REASON OF VACANCY

## OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Lisa Gussin (Wife) appeals the family court's January 17, 1991 Divorce Decree and February 21, 1991 Findings of Fact and Conclusions of Law. Wife has satisfied her burden on appeal of showing where in the record the family court erred. However, she has not satisfied her burden on appeal of showing that she has been harmed by the family court's errors. Therefore, we affirm.

### FACTS

The relevant events occurred chronologically as follows:

| | |
|---|---|
| May 6, 1983 | Date of marriage (DOM). |
| November 14, 1986 | Birth date of daughter. |
| February 23, 1989 | Date Wife filed a complaint for divorce. Date of final separation in ·contemplation of divorce (DOFSICOD). |

| March 22, 1990 | Date of the conclusion of the evidentiary part of the trial (DOCOEPOT). |
| August 1, 1990 | Date of oral decision. |
| January 17, 1991 | Divorce Decree is entered. |
| February 21, 1991 | Findings of Fact and Conclusions of Law are entered. |

At the DOM, Husband owned the following items and net market values (NMVs). Since there is no evidence that he subsequently gifted any of them, these are Husband's Category 1 NMVs. The first column lists the actual NMVs at the 1983 DOM. The second column lists the DOM NMVs stated in terms of DOCOEPOT dollars using a multiplier of 1.329614. The family court decided to use the latter NMVs in its calculations.

| Item | NMV | Adjusted NMV |
| --- | --- | --- |
| Cash | $ 42,982.00 | $ 57,149.46 |
| Mauna Luan apartment | 33,000.00 | 43,877.26 |
| Kaneohe house | 32,900.00 | 43,744.30 |
| Kailua house | 35,000.00 | 46,536.49 |
| Kona Pacific apartment (1/2) | 15,020.00 | 19,970.80 |
| Kauai apartment (1/8) | 3,750.00 | 4,986.05 |
| Honda Accord | 4,000.00 | 5,318.45 |
| TOTAL | $166,652.00 | $221,582.81 |

At the DOCOEPOT, Husband owned the following:

| Item | NMV |
| --- | --- |
| Kaneohe house | $159,730.00 |
| Kona Pacific apartment (1/2) | 8,000.00 |
| Kauai apartment (1/8) | (250.00) |
| TOTAL | $167,480.00 |

In the absence of any evidence that Husband gifted any of these three items after the DOM, the $115,810 difference between the DOM NMV of these items and the DOCOEPOT NMV of these items is a Category 2 NMV.

At the DOCOEPOT, Husband and Wife jointly owned the following:

| Item | NMV |
| --- | --- |
| Waialae–Iki Ridge residence | $583,000.00 |

At the DOCOEPOT, Husband and/or Wife owned the following:

| Item | NMV |
| --- | --- |
| HonFed savings | $ 7,802.42 |
| Pualei Circle proceeds | 17,095.00 |
| Pioneer Federal checking | 960.00 |
| HonFed checking | 454.00 |
| Shearson–Am Express money market | 2,950.74 |
| Dodge | 4,788.00 |
| Honda | 500.00 |
| Executive Life Insurance | 1,275.00 |
| First Nationwide IRA | 2,612.62 |
| Strong Total Return IRA | 2,517.07 |
| Merrill Lynch | 591.00 |
| Territorial Savings | 118.77 |
| BMW | 5,000.00 |
| HonFed savings | 13,400.00 |
| American Surgical Center | 4.00 |
| Mutual shares | 1,945.88 |
| USAA Cornerstone | 1,292.77 |
| South Africa Controlled Investments | 1,074.00 |
| Forte claim | 4,715.65 |
| TOTAL | $ 69,096.92 |

At the DOCOEPOT, Husband and/or Wife owed the following debt:

| Creditor | Debt |
|---|---|
| Sears | ($ 1,026.71) |

All DOCOEPOT NMVs are Category 5 NMVs except to the extent that they are proven to be Category 1, 2, 3, or 4 NMVs. *Collier v. Collier*, 8 Haw. App. 28, 791 P.2d 725, *cert. denied*, 71 Haw. 667, 833 P.2d 900 (1990). In the Gussins' case, it is undisputed that a portion of the DOCOEPOT NMVs were Categories 1 and 2 NMVs. Absent a valid finding that Husband subsequently legally gifted any of his DOM Category 1 NMVs or during–the–marriage Category 2 NMVs to Wife, to Husband and Wife, or to a third party, and absent any adjustment for inflation, the Uniform Starting Point (USP) for the division of the $818,550.21 DOCOEPOT NMV was as follows:

| Item | Total | Husband | Wife |
|---|---|---|---|
| Category 1 | $166,652.00 | $166,652.00 | |
| Category 2 | 115,810.00 | 86,857.50 | $ 28,952.50 |
| Category 5 | 536,088.21 | 268,044.105 | 268,044.105 |
| TOTAL | $818,550.21 | $521,553.605 | $296,996.605 |

Absent a valid finding that Husband subsequently legally gifted any of his DOM Category 1 NMVs or during–the–marriage Category 2 NMVs to Wife, to Husband and Wife or to a third party, but with the family court's adjustment for inflation, the USP for the division of the $818,550.21 DOCOEPOT NMV was as follows:

| Item | Total | Husband | Wife |
|---|---|---|---|
| Category 1 | $221,582.81 | $221,582.81 | |
| Category 2 | 60,879.19 | 45,659.39 | $ 15,219.80 |
| Category 5 | 536,088.21 | 268,044.105 | 268,044.105 |
| TOTAL | $818,550.21 | $535,286.305 | $283,263.905 |

The family court did not include the NMV of the Kailua house and the Honda Accord in its calculation of Husband's Category 1

NMV, increased the NMV of Husband's other Category 1 assets to account for inflation (thereby correspondingly reducing Husband's Category 2 NMV), and awarded the distributable NMVs as follows:

| Item | Total | Husband | Wife |
|------|-------|---------|------|
| Category 1 | $169,727.87 | $169,727.87 | |
| Category 2 | 98,778.85 | 83,962.02 | $ 14,816.83 |
| Category 5 | 550,043.49 | 275,021.745 | 275,021.745 |
| TOTAL | $818,550.21 | $528,711.635 | $289,838.575 |

## DISCUSSION
### I.

The family court failed to comply with the mandates of *Muraoka v. Muraoka*, 7 Haw. App. 432, 776 P.2d 418 (1989), thereby unnecessarily complicating matters for the parties, itself, and the appellate courts. However, since neither party sought compliance or complained about the noncompliance, we will ignore the family court's neglect of its duty in this case.

### II.

Wife challenges the family court's adjustment of the Category 1 NMVs for inflation. Since such an adjustment is within the sound discretion of the family court, *Cassiday v. Cassiday*, 6 Haw. App. 207, 716 P.2d 1145 (1985), *aff'd in part, rev'd in part*, 68 Haw. 383, 716 P.2d 1133 (1986), we are compelled to disagree.

When we issued our opinion in *Cassiday*, however, Hawai'i case law pertaining to the division and distribution of property in divorce cases had progressed only to "general rules." Back then, we concluded that,

[a]s a general rule, it is equitable to award each divorcing party one–half of the after. acquisition but during marriage real increase in the net value of property separately

owned at the TOM [time of marriage] or acquired during the marriage by gift or inheritance and still separately owned at the TOD [time of divorce]. The real increase is that increase which is not directly attributable to inflation.

6 Haw. App. at 213, 716 P.2d at 1149–50 (footnote omitted).

The Hawai'i Supreme Court's opinion in *Cassiday* agreed that

[i]t is generally accepted that each divorcing party is entitled to the date of marriage net value of his or her premarital property and the date of acquisition net value of gifts and inheritances which he or she received during the marriage.

68 Haw. at 390, 716 P.2d at 1149. However, it left the matter of adjusting for inflation to "the sound discretion of the trial court." *Id.*

Since *Cassiday*, Hawai'i case law has made significant progress toward the goals of uniformity of decisional process and defining the range of choice and the limits of authorized equitable discretion. We now have Categories of NMVs, USPs for the division and distribution of the Categories of NMVs, and, when the case is appealed, the required specification by the family court of the factual considerations upon which the deviation or the refusal to deviate from the USPs are based.

The USPs specify how the Categories of NMVs to be divided and distributed in the case shall be divided and distributed (1) if the evidence in the record establishes only the date of the marriage, the entitlement to a divorce, and the ownership of Categories of NMVs; and (2) if there is no evidence relevant to "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Hawai'i Revised Statutes § 580–47(a) (Supp. 1990). The party who wants the family court to deviate from the USP has the burden of proof.

If the family court's division and distribution of the assets and debts of the parties is appealed and the appellant is dissatisfied because the family court's division and distribution materially differs from the USP, then the family court must specify the factual considerations upon which the difference is based. If the appellant is dissatisfied because the family court's division and distribution does not materially differ from the USP in the manner requested at the trial by the appellant, then the family court must specify the factual considerations upon which the denial of the requested difference is based.

*Muraoka v. Muraoka*, 7 Haw. App. 432, 438–39, 776 P.2d 418, 422 (1989).

When the appeal challenges a deviation from the USP, the appellate court determines (1) whether, as a matter of law, the factual considerations specified by the family court and the appellant authorized any deviation from the USP; and (2) if the answer is yes, whether the extent of the deviation was an abuse of the family court's discretion. When the appeal challenges a refusal to deviate from the USP, the appellate court determines (1) whether, as a matter of law, the factual considerations specified by the family court and the appellant authorized any deviation from the USP; and (2) if the answer is yes, whether the refusal to deviate from the USP was an abuse of the family court's discretion.

*Hatayama v. Hatayama*, 9 Haw. App. 1, 818 P.2d 277 (1991). The USPs for Categories 1 and 3 are 100% to the owner and 0% to the owner's spouse. *Woodworth v. Woodworth*, 7 Haw. App. 11, 740 P.2d 36 (1987), *overruled in part*, *Myers v. Myers*, 70 Haw. 143, 764 P.2d 1237 (1988). The USPs for Categories 2 and 4 are 75% to the owner and 25% to the owner's spouse. *Id.* If we now had to choose between all family courts adjusting Category 1 NMVs for

inflation and all family courts not adjusting Category 1 NMVs for inflation, we would opt for the latter. Since uniformity of process is not possible if some family courts adjust Category 1 NMVs for inflation and others do not, we now urge all family courts not to adjust Category 1 NMVs for inflation.

## III.

Wife contends that the family court reversibly erred when it categorized Husband's $57,148.86 DOM cash and the $43,876.80 DOM NMV of the Mauna Luan apartment as Husband's Category 1 NMVs. She contends that these NMVs should have been included within Category 5. In her opening brief, she states:

> The equity from the Mauna Luan condo and [Husband's] cash assets were commingled in joint accounts with marital earnings and used to purchase and develop the Waialae–iki residence.

> [Wife] argued below that [Husband's] Mauna Luan equity and DOM cash reserves were "transmuted" into marital property when he commingled them in joint accounts with earnings and utilized them to purchase a joint marital residence. The doctrine of transmutation is consistent with the ICA's definition of category one assets as well as the Supreme Court's philosophy that "marriage is a partnership to which both parties bring their financial resources as well as their individual energies and efforts. *Cassiday*, 68 Haw. at 387.

We disagree with Wife. Transmutation requires tracing. We have concluded that "[t]he categorization of Categories 1 and 3 NMVs does not involve tracing beyond the transaction by which the husband or wife acquired the property." *Gardner v. Gardner*, 8 Haw. App. 461, 476, 810 P.2d 239, 247 (1991). In our view, the doctrine of transmutation is inconsistent with this court's definition of a Category 1 NMV as follows:

> Category 1. The [NMV], plus or minus, of all prop-
> erty separately owned by one spouse on the [DOM] but
> excluding the [NMV] attributable to property that is sub-
> sequently legally gifted by the owner to the other spouse,
> to both spouses, or to a third party.

*Malek v. Malek*, 7 Haw. App. 377, 380 n.1, 768 P.2d 243, 246 n.1 (1989).

The only allowance in Category 1's definition for a subsequent change is when there is a subsequent gift of a Category 1 NMV. In the Gussins' case, there is no evidence that Husband legally gifted any Category 1 NMVs to Wife or to Husband and Wife. The fact that after the DOM Husband deposited some of his Category 1 NMV into a marital fund which was used to purchase a joint asset is insufficient to prove the occurrence of a legal gift of that NMV to Wife.

## IV.

When it divided Husband's Category 2 NMV, the family court deviated from the 75%–25% USP and awarded 85% of it to Husband and 15% to Wife. Wife contends that this deviation was an abuse of discretion. The family court's factual considerations for the deviation were (1) that Husband earned more money from his activities during the marriage than Wife earned from her activities during the marriage; (2) that Husband deposited his during-the-marriage earnings into a separate account; and (3) that Wife was not involved in managing and maintaining the investment properties involved. All of these factual considerations ignore the inherent benefits and liabilities of the marital partnership we outlined in *Hatayama v. Hatayama*, 9 Haw. App. 1, 818 P.2d 277 (1991). Factual considerations (1) and (2) did not authorize any deviation from the USP. Husband's earnings from his activities during the marriage were marital partnership earnings. Factual consideration (3) did not authorize any deviation from the USP. Husband's during-the-marriage management and maintenance of his premarital

investment properties were marital partnership activities. The Category 2 USP favors the owner 75%–25%. Wife's during–the–marriage non–involvement in the management and maintenance of Husband's premarital investment property was no more a valid factual consideration for reducing her 25% USP share under Category 2 than her preparing all of his meals or doing all of the housework would have been valid factual considerations for increasing her 25% USP share.

## V.

In this appeal, Wife contends that the family court started at the wrong USP and erroneously deviated from the correct USP in Husband's favor. She does not contend that the family court erred when it failed to deviate in her favor from the correct USP. A comparison of the USPs and the family court's award is as follows:

|  | **Husband** | **Wife** |
| --- | --- | --- |
| USP not adjusted for inflation | $521,553.605 | $296,996.605 |
| USP adjusted for inflation | 535,286.305 | 283,263.905 |
| Family court's award | 528,711.635 | 289,838.575 |

In other words, the family court awarded Wife more than she would have been awarded pursuant to the USP adjusted for inflation. Since Wife has not sustained her burden on appeal of showing that she has been harmed by the family court's errors, we conclude that the family court's errors were harmless to Wife.

## VI.

Wife contends that the family court abused its discretion when it ordered each party to pay their own attorney fees and costs. We disagree.

## CONCLUSION

Accordingly, we affirm the January 17, 1991 Divorce Decree and the February 21, 1991 Findings of Fact and Conclusions of Law.

*Peter Van Name Esser* and *Willard J. Peterson* (Peterson & Esser, of counsel) and *Paul A. Tomar* on the brief for plaintiff–appellant.

*Charles T. Kleintop, Sara R. Harvey,* and *Carolyn O. Tavy* (Stirling & Kleintop, of counsel) on the brief for defendant–appellee.

## CONCURRING OPINION BY HEEN, J.

I concur in the result only of this case. I remain convinced that the uniform starting points established by prior opinions of this court are contrary to Hawai'i Revised Statutes § 580–47(a) (Supp. 1990). *See* concurring opinion in *Bennett v. Bennett,* 8 Haw. App. 415, 807 P.2d 597 (1991).